NOTICE
Decision filed 12/12/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230803-U

NO. 5-23-0803

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-1197 |
| | ) | |
| TYZERION WESLEY, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Vaughan and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not abuse its discretion in denying pretrial release where the trial court's findings that the defendant posed a real and present threat to the safety of any person or the community and that no less restrictive conditions would avoid the real and present threat to the safety of any person or the community were not against the manifest weight of the evidence.

¶ 2    The defendant, Tyzerion Wesley, appeals the trial court's order regarding defendant's pretrial release pursuant to Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Acts 101-652, § 10-

---

[1]The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or the public act. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

255, 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).

¶ 3                                        I. Background

¶ 4      On September 14, 2023, a firearm was discharged in the direction of a person and within 1000 feet of Booker T. Washington School in Urbana. The State outlined the facts at the hearing on its petition to deny pretrial release held on September 28, 2023. At 2:49 p.m., Urbana police officers responded to a report of shots fired near Booker T. Washington School, an elementary school. School was in session when the shots were fired. Witnesses reported hearing four gunshots and seeing male subjects run southbound on Wright Street in Urbana, while another group of males ran toward 1206 Brookstone Court in Urbana. The witnesses described the clothing and appearance of the males involved. Officers located shell casings in the area consistent with the witness reports about the location of the shooter. The officers determined that the gun used was a .45 caliber.

¶ 5      Surveillance video obtained from the elementary school provided police with additional information. Six teenage males were involved in the incident. When the shooting began, two teens were on the sidewalk in the 1400 block of Eads in Urbana. The other four teens were in a group spread out along Eads Street and appeared to be pursuing the other two teens. Police detectives obtained screenshots of the six teenagers and reviewed them with school officials and other officers in an attempt at identification. Two minors were identified. Officers went to an address in Champaign where the two minors lived. Upon arrival, one of the two minors, J.W., who was 11 years old, ran from the officers carrying a backpack. Upon catching him, officers ascertained that the backpack contained two stolen firearms, several ammunition magazines, including a 50-round drum magazine, and 390 rounds of individual ammunition. Officers noted that the drum magazine

2

was consistent with a magazine seen on the school surveillance video attached to a firearm held by one of the shooters. Officers interviewed J.W. who identified the other teens involved in the shooting incident, including the defendant he identified as "Ty." Based on J.W.'s identification, the officers determined that the defendant was the individual who was standing in the spot where the officers found the .45-caliber shell casings. Officers distributed the names and the screenshots to other police departments to attempt to get a complete identification of the defendant.

¶ 6 On September 24, 2023, Champaign officers contacted the defendant on an unrelated matter and concluded that he matched the description of the suspect "Ty." The defendant was detained, brought to the Urbana Police Department and was interviewed. The defendant admitted that he was one of the shooters. He claimed that one of the two minors displayed a gun to the defendant and the other teens in his group. The State informed the court that this alleged display of a gun is not seen on the surveillance video. However, the State indicated that one of the four teens in the defendant's group started chasing the other group, and at that point a gun was fired.

¶ 7 The defendant would not tell the officers where he obtained the gun but told them that he discarded the gun in an alley. However, the State advised the court that three days later, the same gun—based upon ballistics testing—was used in another shooting in a Champaign apartment complex in the vicinity of a child. Witnesses to this second shooting described the persons involved as two teen black men.

¶ 8 On September 26, 2023, the State filed its information in this case charging the defendant with aggravated discharge of a firearm (720 ILCS 5/24-1.2(b) (West 2022)) in that he knowingly discharged a firearm in the direction of a person within 1000 feet of a school.

¶ 9 On the same date, the State filed its petition asking the trial court to deny pretrial release for the defendant. The State alleged that the defendant was charged with a qualifying offense, and

that he posed a real and present threat to the safety of the community. Defendant appeared in court on this date and was provided with a copy of the information, counsel was appointed for him, and he waived his preliminary hearing entering a not guilty plea.

¶ 10    On September 28, 2023, the trial court held the hearing on the State's petition seeking to deny the defendant's pretrial release. The State provided information it had discerned from interviews and review of surveillance footage from the school where the shooting occurred. The State also informed the court that at the time and date of the shooting, a fifth-grade teacher was outside with his students. The teacher reported seeing the teens walking toward the school. He described the teens as wearing ski masks and keeping their hands in the waistbands of their pants. Based upon this behavior, the teacher believed something was wrong and immediately got his students to reenter the school building. As the students were walking back into the school, shots were fired, and the teacher said that he saw the teens running.

¶ 11    Finally, the State informed the court that four of the other teenagers had been charged. One immediately pled guilty and had been released pending sentencing. Two of the four teenagers had been detained "based on their dangerousness."

¶ 12    The defendant's attorney argued that the facts did not support pretrial detention in this case. She stated that the defendant had a three-month-old daughter and was expecting a son in April 2024. He was not employed but had been scheduled for a job interview that he had to miss due to his detention. The defendant's mother was also present in the courtroom and had advised her son's attorney that she would assist with any pretrial conditions. She stated that her son caused no problems in the home and was a well-behaved and helpful young man. The defendant's attorney advised that the defendant had only completed the tenth grade, but that he was looking into the Urbana Adult Education Center program to "move forward in life." She informed the trial court

4

that the defendant had no prior criminal or juvenile history. The defendant's attorney suggested that several in-home detention options were available in Champaign County and would be appropriate.

¶ 13 In closing, the State argued that the defendant had not provided information about the location of the gun involved in the shooting. The State noted that this same gun was used in another shooting days after this one and argued that the State had information connecting him with that shooting. With no information provided as to the whereabouts of this gun, the State argued that there was no assurance that he would not "find" that gun and use it again if he was not detained for trial. The State also suggested that the defendant was not stable and was at an increased risk as he had no education or employment, while being a father of one child and with a second child on the way.

¶ 14 At the conclusion of the detention hearing, the trial court granted the State's petition finding that the offense charged fell into the detainable category, and that the defendant posed a real and present threat to the safety of any person or persons, or the community based upon the specific facts of the case and by conduct that included a forcible felony. The court found that the State had shown by clear and convincing evidence that "that the proof is evident or presumption great that Mr. Wesley committed that offense." The court found that there was much to show that the defendant could potentially comply with conditions of pretrial release, but that this potential was grossly outweighed by the evidence of the defendant's offense conduct and his conduct in the following days. The court noted that this offense carried a presumption of pretrial release. Despite this presumption, the court found that the defendant's actions displayed extreme danger and "a level of depravity and complete lack of concern for the safety of this community's most vulnerable

5

members" as the crime was committed within 1000 feet of an elementary school that was in session.

¶ 15    The order included the trial court's findings that the defendant committed a detainable offense, as follows:

"Defendant Mr. Wesley was identified by witnesses, captured by video, and admitted himself, as being involved in a shooting on September 14, 2023—as a shooter—on Brookstone Court within 1,000 feet of a school. Spent casings were found at the location where video captured him standing during the shooting."

The order also included the trial court's findings that the defendant posed a real and present threat and/or that he posed a high likelihood of willful flight, and that no condition or combination of conditions of pretrial release (725 ILCS 5/110-10 (West 2022)) could mitigate the real and present threat described as follows:

"Despite his lack of prior record, family support, obligations to children (one born and one on the way), and other indications of community and family ties and structure, the specific articulable facts of the case show dangerousness to the community and the persons in it that cannot be mitigated by any combination of release conditions. Mr. Wesley's shooting was part of a gunfight showdown in the middle of the afternoon on a public street. All those involved were armed to the teeth. The school next to the shooting was a grade school and it was in session. Fifth graders were outside and, when the shooting started, their teacher frantically rushed them inside the building for safety. Mr. Wesley admitted that he tossed his gun in an alley but did not tell police where, so wherever it is, it can be recovered and hidden or destroyed. This crime reflects depravity and a complete disregard of

6

the danger it posed to this community's most vulnerable members. Also, comparison evidence linked the gun that produced the casings found where Mr. Wesley was shooting to another shooting that happened the very next day at an apartment complex in the middle of the day that also endangered children."

¶ 16    The defendant timely appealed from the trial court's September 28, 2023, order denying his pretrial release and ordering his confinement in the Champaign County jail pending trial. Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023). The defendant asked this court to reverse the trial court's order denying his pretrial release. In support, the defendant argued that the "State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case." The specific alleged grounds for relief were (1) the defendant's youth, having just turned 18 on August 8, 2023; (2) that the defendant resides with his mother in Champaign; (3) that the defendant has no prior police involvement; (4) that the defendant could be placed on GPS monitoring and home confinement during the pendency of the case; and (5) that the defendant has extended family in the area and is not a flight risk.

¶ 17    The defendant, through his appellate counsel, has opted to stand on the notice of appeal.

¶ 18                                            II. Analysis

¶ 19    Pretrial release is governed by the Act as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). A defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1. After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant

7

has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)). If the trial court determines that the defendant should be denied pretrial release, the court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h).

¶ 20    The Code provides a nonexclusive list of factors that the trial court may consider in making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the court may consider evidence or testimony as to factors that include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

8

¶ 21 To reverse a trial court's finding that the State presented clear and convincing evidence showing that mandatory conditions of release would fail to protect any person or the community, the reviewing court must conclude that the trial court's findings were against the manifest weight of the evidence. See *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (setting a similar standard of review for requirement of clear and convincing evidence by the State in juvenile proceedings). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Id.* Additionally, questions regarding whether the trial court properly considered one or more of the aforementioned factors in determining dangerousness are reviewed for an abuse of discretion. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15 (in considering trial court's decision to deny bail, the reviewing court will not substitute its judgment for that of the trial court merely because it would have balanced the appropriate factors differently).

¶ 22 If the trial court finds the State proved a valid threat to a person's safety or the community's safety and/or defendant's likely willful flight to avoid prosecution, or defendant's failure to abide by previously issued conditions of pretrial release, then the trial court must determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022). In reaching its determination, the trial court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of

9

the defendant;[2] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id*. The statute lists no singular factor as dispositive. *Id*. The trial court's pretrial release determination, modification of pretrial release determination, or revocation of pretrial release determination will not be reversed unless the determination was an abuse of discretion. See *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977); *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15 (setting a similar standard of review for the sentence imposed on the defendant after the trial court's consideration of statutory factors and evidence presented at sentencing).

¶ 23    The defendant was charged with aggravated discharge of a firearm within 1000 feet of a school (720 ILCS 5/24-1.2(b) (West 2022)). This charge is a Class X felony that carries a mandatory prison sentence of 6 to 30 years, followed by 3 years of mandatory supervised release. 730 ILCS 5/5-4.5-25(a), (*l*) (West 2022). Based on our review of the record, including the notice of appeal, we find that: (1) the trial court's finding that the defendant met the dangerousness standard, in that he posed a real and present threat to the safety of any person or persons in the community, was not against the manifest weight of the evidence; and (2) the trial court's determination that no less restrictive conditions would avoid the real and present threat to the safety of any person or the community was not against the manifest weight of the evidence.

---

[2]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

¶ 24                              III. Conclusion

¶ 25    We have thoroughly reviewed the record on appeal and conclude it does not demonstrate

that the trial court's order denying pretrial release was an abuse of discretion. Therefore, we affirm

the Champaign County circuit court's order.


¶ 26    Affirmed.